IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DENNIS RAY YOUNG,**                )
                                                            )
        **Plaintiff,**                         )
                                                            )
v.                                                         )
                                                            )    **Case No. 14-2592-CM**
**ULTRA-CHEM, INC.,**                        )
                                                            )
        **Defendant.**                         )
_____)

## MEMORANDUM AND ORDER

Plaintiff Dennis Ray Young brings this employment retaliation lawsuit pro se. Plaintiff claims that defendant Ultra-Chem, Inc. terminated his employment in retaliation for filing a 2008 employment discrimination charge and 2009 employment discrimination case. Defendant terminated plaintiff's employment in 2013. Defendant filed a Motion for Summary Judgment (Doc. 37), arguing that plaintiff is unable to establish a prima facie case of retaliation because of the significant time gap between his protected activity and his termination. Plaintiff initially filed a motion to stay summary judgment briefing (Doc. 42) and an objection to the magistrate judge's order denying appointment of counsel (Doc. 40). The court first addresses the objection to the order denying appointment of counsel and the motion to stay. The court will then address the motion for summary judgment.

### Objection to the Order Denying Appointment of Counsel

On July 23, 2015, Magistrate Judge James P. O'Hara denied a request by plaintiff to appoint counsel. Plaintiff objected to Judge O'Hara's order on August 4, 2015. In his objection, plaintiff explains that he has blepharitis, a disease that hurts the eye. Plaintiff attaches a doctor's note from Sabates Eye Centers stating that plaintiff "has difficulty reading." Plaintiff also states that he had difficulty understanding legal terminology during a hearing with Judge O'Hara.

Motions to appoint counsel are nondispositive motions. *See* D. Kan. R. 6.1(d)(1) (defining nondispositive motions as "motions other than motions to dismiss, motions for summary judgment, motions to remand, or motions for judgment on the pleadings"). The standard of review under which a district court reviews a magistrate judge's decision on a nondispositive motion is the "clearly erroneous or contrary to law standard." *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (citing 28 U.S.C. § 636(b)(1)(A)). This standard requires the court to affirm the magistrate judge's decision unless it is "left with the definite and firm conviction that a mistake has been committed." *Burton v. R.J. Reynolds Tobacco Co.*, 200 F.R.D. 661, 667 (D. Kan. 2001) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

In his order, Judge O'Hara carefully considered the pertinent law and plaintiff's situation. He concluded that plaintiff was not entitled to appointment of counsel because (1) plaintiff appears capable of representing himself; (2) the factual and legal issues involved are not complex; and (3) plaintiff's claims do not appear particularly meritorious. Judge O'Hara made the decision after questioning plaintiff under oath during a hearing in July 2015. He also observed plaintiff's appearance and ability to read and understand documents during the hearing.

Judge O'Hara applied the correct law, and his decision is not clearly erroneous. To the contrary, Judge O'Hara went to great lengths to evaluate whether it would be fundamentally unfair to require plaintiff to proceed without appointment of counsel. The court finds no basis to overturn Judge O'Hara's decision. Plaintiff's objection is overruled.

### **Motion to Stay Summary Judgment Briefing**

Defendant filed its motion for summary judgment on August 3, 2015. On August 4, 2015, when plaintiff objected to Judge O'Hara's order denying him appointed counsel, he also requested that the court stay the summary judgment briefing in this case. In light of that request, the court entered an

order on August 21, 2015, ordering defendant to respond to plaintiff's motion to stay by September 4, 2015, and plaintiff to reply by September 18, 2015. The court also temporarily lifted plaintiff's deadline to respond to the summary judgment motion (which was otherwise August 24, 2015).

On September 18, 2015, plaintiff responded to the summary judgment motion. He stated that he was "physically, and [m]entally burdened" to respond, but his response tracks the summary judgment motion and indicates a full intent to respond to the motion—not reply to plaintiff's motion to stay briefing. Plaintiff also filed a memorandum in support of his response, attaching several exhibits. Finally, after defendant filed a reply in support of its motion, plaintiff filed his own reply (which was essentially a surreply filed without permission). Nevertheless, the court will consider plaintiff's surreply. It does not appear to be an attempt to circumvent the rules and does not add new evidence to be considered by the court.

Plaintiff's motion to stay summary judgment briefing now appears moot. Plaintiff has fully responded to the motion. The court therefore denies plaintiff's motion to stay briefing (Doc. 42) as moot.

**Motion for Summary Judgment**

Because plaintiff is capable of representing himself and the motion for summary judgment is fully briefed, the court now turns to the merits of defendant's summary judgment motion. Where, as here, the plaintiff proceeds pro se, the court construes the pro se filings liberally. *Hall v. Doering*, 997 F. Supp. 1445, 1451 (D. Kan. 1998) (citing *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980)). On the other hand, a plaintiff's pro se status does not relieve him from complying with this court's procedural requirements. *Barnes v. United States*, 173 F. App'x 695, 697 (10th Cir. 2006) (citations omitted); *see also Santistevan v. Colo. Sch. of Mines*, 150 F. App'x 927, 931 (10th Cir. 2005) (holding that a pro se litigant must follow the same rules of procedure as other litigants).

**I.      Factual Background**

The following facts are taken largely from defendant's proposed uncontroverted facts.  Plaintiff attempted to controvert some of the facts, but did so with unsupported, immaterial, and irrelevant statements.  He primarily responded with argument and unsupported allegations.  In doing so, plaintiff failed to follow the required procedural format.  *See* Fed. R. Civ. P. 56(c); D. Kan. R. 56.1.  The court does not identify every instance in which it disregards plaintiff's factual statements, but none of them properly controvert the facts (relayed below) that are material to this court's decision.

In 2004, plaintiff began working for defendant as a telephone salesperson.  In 2008, plaintiff filed a charge of discrimination against defendant with the United States Equal Employment Opportunity Commission.  In that charge, plaintiff alleged that defendant had unlawfully discriminated against plaintiff based on plaintiff's race and age.  Plaintiff then filed a lawsuit on October 20, 2009, based on the same allegations.

The court dismissed some of the claims in plaintiff's lawsuit on February 9, 2011 and the remaining claims on October 6, 2011.  During and after the discrimination charge and lawsuit, plaintiff continued working for defendant.

Defendant implemented a revised workplace environment policy (the "Respect Policy") on October 10, 2011.  This policy prohibits sexual harassment and retaliation against co-workers who make sexual harassment reports.  Plaintiff received a copy of the Respect Policy on October 12, 2011.  He was also trained on the policy.

The Respect Policy prohibits employees from engaging in "visual conduct, including . . . displaying of sexually suggestive objects or pictures . . ." in the workplace.  It also prohibits employees from "retaliat[ing] for making harassment reports or threatening to report harassment."  The policy remained in effect in October 2013.

On October 4, 2013, Sarah Grubb—one of plaintiff's co-workers—complained to management that plaintiff had given her a sexually explicit shot glass depicting a man and a woman engaged in sexual intercourse. Stephanie Davidson (defendant's president) and Cam Cravens discussed Grubb's complaint with plaintiff that same day. They advised plaintiff that giving the shot glass to Grubb violated the Respect Policy. They reviewed the policy again with plaintiff and warned him that any further harassment or retaliation in violation of the policy would result in further action—including termination of plaintiff's employment. But Davidson and Cravens did not take any employment action against plaintiff such as suspension or termination at that time.

Within five to ten minutes after leaving the October 4 meeting, plaintiff returned to Davidson's office and told Davidson and Cravens that Grubb had shown plaintiff her vagina in the workplace approximately two years before. Cravens told plaintiff that making this report two years after it happened and immediately after learning of Grubb's complaint appeared to be retaliation. Davidson and Cravens then reminded plaintiff a second time that retaliation violated the Respect Policy, and that he could be terminated for such violation. But again, neither took any disciplinary action against plaintiff for reporting the two-year-old incident.

On October 9 and 10, 2013, plaintiff told two other employees that he could not believe that Grubb had complained about the shot glass because plaintiff had been in a sexual relationship with her. Plaintiff testified in his deposition that he made these comments after Grubb filed the complaint against plaintiff because he "figured it would be even." (Doc. 38-2 at 30.) On October 10, 2013, Grubb complained to management that plaintiff told the two employees that he and Grubb had been sexually involved and that Grubb had shown plaintiff her vagina in the workplace.

After receiving Grubb's complaints, Davidson investigated by interviewing Grubb, plaintiff, and the other employees involved. Following that investigation, Davidson terminated plaintiff's

-5-

employment for violating the Respect Policy by retaliating against Grubb for filing her October 4, 2013 complaint against plaintiff.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.    Discussion

To determine whether plaintiff can survive summary judgment on his termination claims, the court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).  Under *McDonnell Douglas*, plaintiff must first establish a prima facie case of retaliation.  If plaintiff carries that burden, defendant must then articulate a facially nondiscriminatory reason for the challenged employment action.  *Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998) (citations omitted).  If defendant makes such a showing, the burden reverts to plaintiff to prove the proffered nondiscriminatory reason is pretextual.  *Id*. (citations omitted).  These standards apply to both plaintiff's age and race retaliation claims.  *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002) (applying *McDonnell Douglas* to Title VII and the Age Discrimination in Employment Act).

To establish a prima facie case of retaliation, plaintiff must show: (1) that he engaged in protected opposition to discrimination; (2) "that a reasonable employee would have found the challenged action materially adverse . . ."; and (3) that a causal connection existed between the protected activity and the materially adverse action.  *Argo v. Blue Cross & Blue Shield of Kan., Inc.*,

452 F.3d 1193, 1202 n.2 (10th Cir. 2006) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

The problem with plaintiff's retaliation claims is a lack of causation. Plaintiff engaged in protected activity in 2008 (filing the age and race discrimination charge) and 2009 (filing the age and race discrimination case). Defendant terminated plaintiff's employment in 2013—long after plaintiff took both actions, and even two years after the case was complete. "A causal connection may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (citing *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)) (finding that adverse action following protected conduct by one day established a causal connection). The Tenth Circuit has "held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation," while "a three-month period, standing alone, is insufficient to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal*, 237 F.3d at 1252 (citing *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997)). Here, the time between actions was far more than any Tenth Circuit case has found close enough in time to independently establish causation.

Because plaintiff cannot rely solely on the time between his protected activity and his termination, he must offer other evidence of causation. Plaintiff has not done so. The uncontroverted evidence shows that plaintiff violated the Respect Policy. Management warned plaintiff that if he retaliated, he could be terminated. Despite that warning, after Grubb reported plaintiff to management, plaintiff told other employees that he and Grubb had a sexual relationship. There is no genuine issue

-7-

of material fact as to whether plaintiff can establish causation.  Plaintiff cannot make a prima facie case of retaliation, and summary judgment is warranted for defendant.

Defendant asks that the court grant it attorney's fees, litigation expenses, and court costs.  But defendant has complied with neither D. Kan. R. 54.2 nor 54.1 in making these requests.  The court denies these requests without prejudice.

**IT IS THEREFORE ORDERED** that plaintiff's objection to the magistrate judge's order denying appointment of counsel (Doc. 40) is overruled.

**IT IS FURTHER ORDERED** that plaintiff's motion to stay summary judgment briefing (Doc. 42) is denied as moot.

**IT IS FURTHER ORDERED** that defendant's Motion for Summary Judgment (Doc. 37) is granted.  Defendant's requests for attorney's fees, expenses, and costs, however, are denied without prejudice.

The case is closed.

Dated this   19th   day of November, 2015, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**
